UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTONIO MICHAEL HILTON,

    Plaintiff,

v.                                      Case No.:  2:23-cv-84-SPC-NPM

CENTURION OF FLORIDA, LLC
and R. SOLORZANO-PALLAIS,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court is Defendant Centurion of Florida, LLC's Motion to Dismiss Amended Complaint (Doc. 34). The other defendant, Dr. Solorzano-Pallais, has not appeared in this case. But because Hilton is a prisoner litigating *in forma pauperis*, the Court has an obligation to dismiss this action "at any time" if it determines the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). So in addition to considering Centurion's arguments, the Court has *sua sponte* considered the sufficiency of Hilton's claims against both defendants.

### Background

Hilton is a prisoner of the Florida Department of Corrections (FDOC). He sues Centurion and Solorzano-Pallais for deliberate indifference to serious medical need in violation of the Eighth Amendment. The Court recounts the

factual background as pled in Hilton's Second Amended Complaint, which it must take as true to decide whether the complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012). The Court has also considered the exhibits Hilton attached to his First Amended Complaint (Doc. 12).

On April 10, 2021, Hilton injured his left knee while playing basketball at DeSoto Correctional Institution. Hilton was immediately taken to the medical department, and Solorzano-Pallais ordered Hilton to be transported to the emergency room at DeSoto Memorial Hospital. An x-ray found no fracture. Hospital staff diagnosed the injury as a knee sprain and recommended a CT scan. When Hilton returned to DeSoto C.I., prison medical staff gave him a brace, crutches, and an ice pack.

Hilton declared a medical emergency a week later because he was in excruciating pain. A nurse assessed Hilton, gave him Ibuprofen for the pain, and advised she could not administer anything stronger without approval from a doctor. Medical staff continued to issue Hilton Ibuprofen, but it did not relieve Hilton's pain. Hilton submitted three sick-call requests over the next 21 days, prompting an appointment with Dr. Solorzano-Pallais. Hilton's primary complaint was extreme pain in his left knee. Solorzano-Pallais told Hilton, "stronger medications get more expensive," and advised he did not see the need for anything stronger than Ibuprofen.

Hilton continued submitting sick-call requests. On May 18, 2021, Dr. C. Stump assessed Hilton's knee, observed tenderness to palpation, prescribed Naproxen for the pain, and scheduled a follow-up. On May 25, 2021, Hilton refused a sick-call because he was not in much pain and had just seen a doctor four days earlier. Hilton began experiencing more pain later that day, so he submitted another sick-call request. Nurse Baldwin saw Hilton on June 2, 2021, and scheduled a follow-up with a provider. Hilton saw Solorzano-Pallais on June 14, 2021, for a "follow up to discuss ATP of CT of L knee." (Doc. 12-1 at 11). Solorzano-Pallais ordered a consultation with a physical therapist to address Hilton's knee pain.

On June 21, 2021, Nurse Baldwin examined Hilton's knee, concluded it was likely dislocated, and scheduled a follow-up. Hilton submitted a sick-call request on June 22, 2021, complaining of pain and swelling in his left knee and numbness in his left foot and requesting an MRI. During the follow-up appointment on July 8, 2021, a medical provider told Hilton the CT scan recommended by the hospital physician had been denied in favor of APT. Solorzano-Pallais explained in a response to a grievance that a CT scan was not found to be clinically indicated at that time.

On July 15, 2021, Dr. Stump submitted a request for an MRI. About two weeks later, Hilton fell again and was taken to the medical department. Dr. Solorzano-Pallais examined Hilton's knee and ordered him transported to the

3

hospital for an MRI. On August 3, 2021, the consulting physical therapist recommended therapy twice a week for six weeks while Hilton awaited diagnostic results. The physical therapist also noted the knee was not in its original position and recommended "further consult." (Doc. 12-1 at 16). On August 4, 2021, the MRI results showed a complete tear of the patellar tendon, and Dr. Stump requested an orthopedic consult.

Hilton was transferred to Central Florida Reception Center for further treatment on August 11, 2021. Dr. James Ryan diagnosed Hilton with chronic rupture of the left patellar tendon and recommended corrective surgery. After some unexplained delays, Hilton underwent surgery to reconstruct the tendon on October 21, 2021, and there were no complications. Hilton has since received physical therapy, and his knee has improved.

Hilton claims the defendants caused him excessive pain by delaying necessary medical treatment. He alleges Centurion has a policy of denying and delaying medical care to save the company money in violation of the Eighth Amendment. He also accuses Centurion of negligent hiring, retention, or supervision for allegedly failing to employ physicians who understand how to treat a dislocated knee. Hilton asserts an Eighth Amendment deliberate-indifference claim against Solorzano-Pallais, plus state law claims for negligence and outrage. Hilton seeks compensatory and punitive damages and a declaration that the defendants violated his constitutional rights. Centurion

argues that Hilton has failed to state any claim against it, and that he failed to exhaust administrative remedies.

**Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Hilton filed this action under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under

color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Hilton is representing himself in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Discussion

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e. The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…
>
> If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside,* 541 F.3d 1077, 1082-83 (11th Cir. 2008).

There are no factual disputes relating to exhaustion here. Hilton filed a grievance on May 17, 2021, complaining that he was not receiving adequate treatment for his knee injury. (Doc. 12-1 at 32). The grievance was denied. (*Id.* at 33). In his appeal, Hilton complained that Solorzano-Pallais refused to order an MRI or CT scan. (*Id.* at 3). The appeal was approved, so Hilton was not required to proceed to the next stage of the grievance process. *See Williams v. Dep't of Corr.,* 678 F. App'x 877, 881 (11th Cir. 2017).

Centurion argues the grievance and appeal show he did not exhaust available administrative remedies arising from his claims against Centurion because they do not mention Centurion's policies or procedures. Courts look to

7

the grievance rules of the particular prison system to determine how much detail a prisoner must include in a grievance. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The only content requirements in the FDOC rules are "that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." Fla. Admin. Code r. 33-103.005(2)(b)2. The rules do not require inmates include any particular level of detail, so "a standard akin to notice pleading is appropriate when determining whether [a plaintiff's] grievances contained sufficient details to exhaust [his] administrative remedies." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019). Thus, "the grievant need not lay out facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

The Court finds that Hilton's grievance and appeal gave the FDOC notice of the issues Hilton raises in this action and allowed the FDOC to investigate them. Thus, he satisfied the PLRA's exhaustion requirement. Hilton was not required to spell out each element of his legal claims in his greivance.

### B. Deliberate Indifference

The Supreme Court held in *Estelle v. Gamble* "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." 429 U.S.

8

97, 104 (1976) (internal citation and quotation marks omitted). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "To establish a § 1983 claim for deliberate indifference, a plaintiff must show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted). In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifferent, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). A difference in medical opinion does not constitute deliberate indifference. *Hernandez v. Sec'y Fla. Dep't of Corr.*, 611 F. App'x 582, 584 (11th Cir. 2015). Nor does the exercise of medical judgment by a care provider. *Id.*

The Court finds that Hilton's knee injury was a serious medical need, but that Hilton has not pled facts showing deliberate indifference to that need.

9

According to the Second Amended Complaint and the medical records attached to the First Amended Complaint, Hilton received medical attention immediately after the injury, and his treatment continued through surgery and rehabilitative physical therapy. Each time Hilton requested medical care, a provider assessed and treated his condition.

Hilton's complaints about the care he received stem from two decisions: Solorzano-Pallais' refusal to initially prescribe pain medication stronger than Ibuprofen and the decision to pursue more conservative treatment before ordering diagnostic testing. While Hilton alleges Solorzano-Pallais mentioned stronger drugs were more expensive, he also acknowledges that Solorzano-Pallais advised, "he did not see the need for anything stronger than Ibuprofen." (Doc. 31 at 6). Solorzano-Pallais thus exercised his medical judgment. Hilton's disagreement as to the pain medication he should have received cannot be the basis of a claim of deliberate indifference. *See Hernandez,* 611 F. App'x at 584 ("Any contentions about the type of medication or treatment [the plaintiff] received amounted to complaints about [the defendant's] exercise of medical judgment, which do not rise to the level of deliberate indifference.").

As for the decision not to initially order a CT scan or MRI, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under

10

the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107).  It is worth noting that the Solorzano-Pallais' subsequent decision to order an MRI followed changes in Hilton's condition. Hilton's initial diagnosis was a knee sprain.  Solorzano-Pallais did not find a CT scan clinically indicated at that time.  He ordered an MRI after a nurse noticed signs of dislocation and Hilton suffered a second fall.  Hilton's allegations do not suggest the timing of the MRI was due to arbitrary delay. Even if Solorzano-Pallais' initial treatment decisions were based on a misdiagnosis, the Eleventh Circuit has "held that a doctor's failure to accurately diagnose a prisoner's condition, even if extremely negligent, did not 'cross the line to deliberate indifference.'" *Ruiz v. Rummel*, 777 F. App'x 410, 415 (11th Cir. 2019) (quoting *McElligot v. Foley*, 182 F.3d 1248, 1256 (11th Cir. 1999)).

For these reasons, the Court finds that Hilton has not stated an Eighth Amendment claim for deliberate indifference to serious medical need.

**C. Gross Negligence and Outrage**

Hilton asserts two state tort claims against Solorzano-Pallais.  In Count 2, Hilton claims Solorzano-Pallais' failure "to seek an MRI in favor of an ATP procedure" constituted gross negligence.  (Doc. 31 at 12).  In Count 3, Hilton claims Solorzano-Pallais committed the tort of outrage by refusing to prescribe medication stronger than Ibuprofen.

11

The limited jurisdiction of federal courts generally does not extend to state-law claims. Federal courts may exercise supplemental jurisdiction "when the state claims arise out of a common nucleus of operative fact with a substantial federal claim." *Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 863, 865 (11th Cir. 2022) (quotation marks and citation omitted). But the Eleventh Circuit and the Supreme Court encourage courts to dismiss state claims when the federal claims have been dismissed. *See id.* at 866 ("A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed.").

The Court declines to exercise supplemental jurisdiction over Hilton's state claims. Hilton may pursue them in state court, but he should be aware of the presuit requirements for medical negligence claims in Florida. *See* Fla. Stat. § 766.203.

### D. Negligent Hiring, Retention or Supervision

Count 4 of Hilton's Second Amended Complaint alleges Centurion negligently failed to employ physicians who knew how to treat a dislocated knee—he is presumably referring to Solorzano-Pallais. A supervisor can be liable under § 1983 "for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the officers come into contact.'" *Keith v. DeKalb Cnty., Ga.*, 749

F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cty. of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Courts also apply the deliberate-indifference standard to claims of supervisory liability based on hiring decisions. *See Key v. Lundy*, 563 F. App'x 758, 760 (11th Cir. 2014). But "plaintiffs cannot maintain a supervisory liability claim tied to an alleged underlying constitutional violation if it is determined that no such violation occurred." *Stalley v. Cumbie*, --- F.4th ---, ---, 2024 WL 5244627, at *10 (11th Cir. Dec. 30, 2024).

Because Hilton fails to state a deliberate-indifference claim against Solorzano-Pallais, he also fails to state a claim based on Centurion's employment of Solorzano-Pallais.

## Conclusion

For the forgoing reasons, the Court will dismiss Hilton's Second Amended Complaint. Because Hilton already amended his complaint twice and his exhibits suggest further amendment would be futile, the Court will enter judgment and close this case.

Accordingly, it is now

**ORDERED:**

Defendant Centurion of Florida, LLC's Motion to Dismiss Amended Complaint (Doc. 34) is **GRANTED**. This action is **DISMISSED without prejudice** for failure to state a claim. The Clerk is **DIRECTED** to terminate any pending deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 13, 2025.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record